UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALVARO QUEZADA,<br><br>            Plaintiff,<br><br>      v.<br><br>R. LINDSEY, et al.,<br><br>            Defendants. | Case No.: 1:10-cv-01402-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>[ECF No. 78] |

Plaintiff Alvaro Quezada is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.**

**PROCEDURAL BACKGROUND**

This action is proceeding on Plaintiff's first amended complaint against Defendants R. Lindsey and P. Gonzalez for conditions of confinement in violation of the Eighth Amendment, and against Defendants R. Lindsey and K.J. Doran for retaliation in violation of the First Amendment.[1]

On April 1, 2015, Defendants Lindsey, Gonzalez, and Doran filed a motion for summary judgment. Plaintiff filed an opposition on June 11, 2015, and Defendants filed a reply and objections on June 18, 2015. (ECF Nos. 88, 89, 90.)

---

[1] On March 18, 2015, summary judgment was granted in favor of Defendant Patel for Plaintiff's failure to exhaust the administrative remedies as to the Eighth Amendment claim against him. (ECF No. 77.)

1

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The Court determines *only*

whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## III.

## DISCUSSION

### A.   Allegations Set forth in Complaint

Plaintiff's allegations arise out of the conditions of confinement at his job in the main kitchen of Kern Valley State Prison (KVSP). Plaintiff alleges that both Defendant Lindsey and Gonzalez were aware of these unsafe conditions and refused to remedy them. Plaintiff reported the unsafe work conditions several times before he was injured. Plaintiff specifically reported the freezers as unsafe because they had two inches of ice on the floor and "metal stock being loose/sticking out of the freezer walls." Several other inmates reported these unsafe conditions as well. Defendant Lindsey repeatedly told Plaintiff that there were no funds to fix the freezers and that inmates needed to be careful. Plaintiff repeatedly addressed the unsafe conditions with Defendant Gonzalez every time he made his rounds in the main kitchen.

On September 10, 2008, Plaintiff's work duties included helping to unload a "heavy pallet" from one of the delivery trucks. Plaintiff was located in the freezer with two inches of ice on the floor. While unloading the damaged pallet, it got stuck on the ice and the only way to get it unstuck was to rock it back and forth. The pallet "thrusted forward and Plaintiff slipped on the ice and severely injured his lower back." Plaintiff alleges he was injured as a result of these unsafe conditions and confinement that both Defendants Lindsey and Gonzalez failed to address.

Secondly, Plaintiff alleges First Amendment retaliation claims against Defendants Lindsey and Doran. Plaintiff alleges that Defendant Lindsey implemented a retaliatory loading and unloading policy and threatened Plaintiff with disciplinary action immediately after he filed a 602 grievance challenging the unsafe conditions and confinement. Plaintiff further alleges that Defendant Doran unlawfully removed Plaintiff from his work assignment in retaliation for his grievance.

///

///

3

**B.      Statement of Undisputed Facts**

1.  Plaintiff Quezada worked in the kitchen at KVSP as a clerk between January 19, 2008, and August 12, 2008.  (Quezada Dep., Ex. A at 36:4-37:24.)

2.  Plaintiff held a position working in the main kitchen storage room at KVSP, loading and unloading items from trucks, beginning on August 12, 2008.  (Id. at 29:11-31:11.)

3.  Plaintiff's accident on September 10, 2008, took place in a freezer used to store meat (meat freezer).  (Id. at 82:9-24.)

4.  At some point in time prior to his injury, Plaintiff noticed ice on the floor of the meat freezer at KVSP.[2]  Id. at 85:24-86:14.)

5.  Plaintiff reported the existence of ice on the floor of the meat freezer to Defendants Lindsey and Gonzalez.  (Id. at 86:15-87:15.)

6.  Defendants No. 6.

7.  Prior to the accident of September 10, 2008, Plaintiff was instructed to break up the ice forming in the freezer.[3]  (Quezada Dep., Ex. A at 91:14-93:21.)

8.  Plaintiff also was instructed to put salt on the floor of the freezer ….Def's No. 8.

9.  Plaintiff claims that the pallet jacks he used at KVSP had worn wheels, which made the pallet jack hard to push.  (Id. at 90:20-91:8.)

10. Plaintiff claims that he reported the problems with the wheels on the pallet jacks to Defendants Lindsey and Gonzalez, who stated that insufficient funds were available to replace the pallet jacks and that Plaintiff should be careful.[4]

11. Plaintiff also claims that there pieces of loose metal on the freezers.  (Id. at 83:6-11.)

12. The loose metal on the freezers did not cause Plaintiff's injury.[5]  (Id. at 83:15-25.)

---

[2] Plaintiff disputes the portion of Defendants' statement that states Plaintiff became aware of the ice on the floor after August 12, 2008.  (ECF No. 88, Opp'n, Pl's Stmt. Disputed Fact Issues No. 4.)  The Court notes Plaintiff's objection and omitted the exact date of Plaintiff's knowledge.

[3] Plaintiff attempts to dispute this fact as to any inference that the order was done out of safety concern.  Plaintiff's objection is without merit as the fact as stated by Defendants does not raise any inference beyond as stated.

[4] Plaintiff cannot attempt to dispute this claim as stated by Defendants by merely contending that funds were available and were subsequently used to correct the problem after Plaintiff's injury.

4

13. On the date of Plaintiff's accident, September 10, 2008, he used the same pallet jack the entire day. (Id. at 98:7-11.)

14. Plaintiff made prior trips in and out of the meat freezer on September 10, 2008, without incident. (Id. at 99:5-24.)

15. Plaintiff's accident of September 10, 2008, occurred at the end of his shift, at approximately 3:00 p.m., after a late arrival of a delivery truck. (Id. at 105:15-106:1.)

16. At the time of the accident, an unidentified inmate was pulling on the bar of the pallet jack, and Plaintiff was pushing the pallet jack from the opposite (rear) side into the meat freezer. (Id. at 108:13-109:19.)

17. Just prior to the accident, Plaintiff's supervisor, K. Jackson, opened the door to the meat freezer. (Id. at 110:24-111:5.)

18. As Plaintiff entered the meat freezer, he expected ice to be present on the floor. (Id. at 112:3-7.)

19. As Plaintiff was pushing the pallet jack into the meat freezer, a wheel on the pallet jack became stuck in a ripple of ice on the floor. (Id. at 114:6-11.)

20. Plaintiff and the unidentified inmate rocked the pallet jack back and forth in order to free it. (Id. at 116:5-11.)

21. After Plaintiff rocked the pallet jack back and forth two or three times, the pallet jack then thrust forward, causing Plaintiff to fall, hyperextending his back. (Id. at 116:14-117:15.)

22. In September 2008, Defendant Lindsey was the Assistant Correctional Food Manager at KVSP. (Lindsey Decl., Ex. B at 1:23-25.)

23. Defendants No. 23.

24. Lindsey and Gonzalez did not have any supervisory authority over personnel working at the Plant Operations Department. (Lindsey Decl., Ex. B at 2:1-2; Gonzalez Decl., Ex. C. at 1:27-28.)

---

[5] Plaintiff cannot dispute this fact, as stated, by contending Defendants nonetheless created a substantial risk of harm because of the loose metal on the freezers.

25. After receiving reports that ice had formed inside the freezer boxes in 2008, Lindsey informed the inmates working in the freezer boxes to be careful and watchful for ice formation(s), to try to break up the ice formations, and to hold on to their pallet jacks in the event of a slip on the ice.[6]  (Lindsey Decl., Ex. B at 2:3-6.)

26. In 2008, Lindsey also received reports that the pallet jacks used by people working in the main kitchen were not functioning properly.  If the malfunction was significant, such as a broken wheel, the pallet jack would not be operational, and would be pulled out of service.  If the malfunction was minor, such as a worn or squeaking wheel, Lindsey would contact the Plant Operations Department at KVSP, requesting that their personnel address the issue.  (Lindsey Decl., Ex. B at 2:9-14.)

27. As of September 10, 2008, inmates working in the kitchens at KVSP unloading cold-storage items from delivery trucks would move the items from the loading dock to the freezers using pallet jacks, which would be pushed directly into the freezer compartments.  (Lindsey Decl., Ex. B at 2:15-17; Gonzalez Decl., Ex. C at 2:9-11.)

28. After September 10, 2008, this procedure was changed.

29. In 2008, Defendant Gonzalez was the Correctional Food Manager at KVSP.  (Gonzalez Decl., Ex. C at 1:23-25.)

30. If a problem developed with the freezers at KVSP, a Work Order would be submitted to the Plant Operations Department at KVSP, requesting that their personnel address the problem.  (Gonzalez Decl., Ex. C at 1:25-28.)

31. In December 2008, Defendant Doran was a correctional lieutenant, responsible for inmate assignments.  (Doran Decl., Ex. D at 1:23-27.)

32. In December 2008, Doran understood that Plaintiff had been working in the main kitchen at KVSP, had injured his back in September 2008, had returned to this position, and then received a Comprehensive Accommodation Chrono from Dr. Patel, dated November 20, 2009, indicating that Plaintiff had sustained an injury which required a

---

[6] Plaintiff attempts to dispute this fact by stating Defendant tried to break up the ice.  However, this statement as phrased merely states that Defendant Lindsey advised inmates working in the freezer boxes to attempt to break up the ice.

6

        back brace through May 18, 2009, and that he had physical limitations preventing Plaintiff from lifting or carrying more than ten pounds, or being engaged in frequent bending or pushing.  (Doran Decl., Ex. D. at 2:1-7.)

33.    In December 2008, Doran was aware that inmates working in the main kitchen at KVSP frequently had to lift more than ten pounds, and also had to frequently bend and push objects.  (Doran Decl., Ex. D at 2:8-9.)

34.    After Plaintiff was removed from his position in the main kitchen at KVSP, he was eligible to apply for available clerical and light duty positions at KVSP, as well as other positions which did not involve lifting or carrying more than ten pounds, frequent bending or pushing.  (Doran Decl., Ex. D. at 2:15-18.)

**C.**    **Defendants' Evidentiary Objections**

Defendants filed objections to Plaintiff's evidence submitted in support of his opposition to their motion for summary judgment.  (ECF No. 90.)  Defendants specifically object to portions of the declaration of Plaintiff, and the declarations of inmates Fluette, Washington, Rodriguez, Howard and Jefferson.  (Id.)

With respect to objections in general, the Court notes that "[a]t summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial."  Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1019 (9th Cir. 2011) (citing Block v. City of Los Angeles, 253 F.3d 410, 418-419 (9th Cir. 2001) (internal quotations omitted).  The focus is on the admissibility of the evidence's contents, not its form.  Fonseca v. Sysco Food Servs. of Arizona, Inc., 374 F.3d 840, 846 (9th Cir. 2001); Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003); Cheeks v. General Dynamics, 22 F.Supp.3d 1015, 1027 (D. Ariz. 2014).  Defendants are advised that it is not the practice of this Court to rule on evidentiary matters individually in the context of summary judgment, unless otherwise noted; and therefore, the Court declines to address each objection.  See Capital Records, LLC v. BlueBeat, Inc., 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010).  The Court will only rule on those objections as to the evidence that is actually considered by the Court in reaching the recommendation herein.

///

**D.     Eighth Amendment-Conditions of Confinement**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). "[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue. . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Hudson, 503 U.S. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted).

Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious. . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety. . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. Id. at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Farmer, 511 U.S. at 835; Frost, 152 F.3d at 1128.

///

An Eighth Amendment violation may be established in the prison work context if the prisoner employee alleges that prison officials compelled him to "perform physical labor which [was] beyond [his] strength, endager[ed his life] or health, or cause[d] undue pain. <u>Berry v. Bunnell</u>, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam); see also <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045-1047 (9th Cir. 2006) (denying qualified immunity where inmate alerted supervisor to defective printing press but ordered inmate to continue working with the defective equipment which resulted in subsequent injury to inmate); <u>Osolinski v. Kane</u>, 92 F.3d 934, 938 (9th Cir. 1996) (a single, minor safety hazard does not violate the Eighth Amendment but allegations of conditions which "exacerbate[] the inherent dangerousness of already-existing hazards" or "render[] [an inmate] unable to provide for his own safety" are sufficient to state a cognizable claim for relief) (internal quotations, brackets and citation omitted).

At the time of his injury, Plaintiff's job duty was to load and unload food items from trucks in the main kitchen storage room using a pallet jack. (Pl. Dep. at 30-31.) The entire floor of the freezer area was covered in approximately two inches of ice. (<u>Id.</u> at 86.) The wheels on the pallet jacks were worn down which made them to be hard to push. (<u>Id.</u> at 91, 93-94.) The pallet jacks would constantly get stuck in the ripples of the ice on the floor. (<u>Id.</u> at 100.) Indeed, on September 10, 2008 (the date of Plaintiff's injury), Plaintiff had to "rock" the pallet jack back and forth about two to three times to get it over the ripples in the ice which caused Plaintiff to fall. (Id. at 116.) Plaintiff complained repeatedly to Defendants Lindsey and Gonzalez about the leaking water pipes, ice on the floor, and damaged pallet jacks. (<u>Id.</u> at 86-90.) It is undisputed that Defendants Lindsey and Gonzalez were aware of the leaking pipes in the meat freezer, the formation of ice on the floor of the meat freezer, and the worn wheels on the pallet jack prior to Plaintiff's injury on September 10, 2008.[7] Defendant Lindsey declares that after receiving reports that leaks had developed in the main freezers at KVSP, and that ice had formed in the freezer boxes, Lindsey submitted Work Orders to the Plant Operations Department at KVSP, requesting that their personnel address the leaks. (Lindsey Decl., Ex. B. at 1:27-28.) Plaintiff submits that he cannot dispute this fact because there is no record of any work order

---

[7] Indeed, Defendant Lindsey acknowledged that ice existed on the floors of the main kitchen freezers since approximately April 16, 2008. (ECF No. 88, Opp'n, App. 2, Attach. B Interrog. No. 6.)

9

having ever been submitted by Defendant Lindsey.  Thus, without evidence of an actual work order, the determination of whether Defendant Lindsey actually submitted a work order regarding the leaking pipes and formation of ice in the meat freezer area is a question of fact that cannot be resolved by the Court.  The same analysis applies to Defendant Lindsey's claim that in 2008, she received reports that the pallet jacks used by people working in the main kitchen were not functioning properly, and would contact the Plant Operations Department at KVSP requesting that their personnel address the issue.  There is no evidence and Defendant Lindsey does not directly declare that she contacted the Plant Operations Department, beyond the statement of her general practice when dealing with such issues.  This same analysis applies to Defendant Gonzalez as he merely declares that, in general, if a problem developed with the freezers at KVSP, such as a leak, a work order would be submitted, and does not state that he ever submitted such a work order in relation to the leaking water pipes, formation of ice on the freezer floors, and problems with the pallet jacks.  Furthermore, even if it was established that work order(s) were submitted, a genuine issue of material fact nonetheless remains because at the time of Plaintiff's injury Defendants were aware of the safety hazards in the kitchen freezer area and ordered Plaintiff to continue to work therein.

The fact that Plaintiff was instructed to break up the ice formation in the freezers and to be "careful" is circumstantial evidence of knowledge on the part of Defendants that an unsafe condition existed in the meat freezer at KVSP where Plaintiff was employed.  Defendants' argument that had Plaintiff followed their directions to break up the ice and put salt on the floor, the accident would not have occurred is pure speculation, and Defendants cannot shift blame to Plaintiff to cure an unsafe condition over which he had no control.

Accordingly, Defendants' motion for summary judgment on Plaintiff's claim under the Eighth Amendment should be denied.

### E.   Qualified Immunity

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted).  Qualified immunity shields government officials from civil damages unless their conduct violates "clearly

established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendants' conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001); Mueller, 576 F.3d at 993. While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

In this instance, the evidence viewed in the light most favorable to Plaintiff demonstrates a constitutional violation and there exist triable issues of fact as to whether that right was violated. Therefore, the Court proceeds without further discussion to the second step of the inquiry.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002). While the reasonableness inquiry may not be undertaken as a broad, general proposition, neither is official action entitled to protection "unless the very action in question has previously been held unlawful." Hope, 536 U. S. at 739. "Specificity only requires that the unlawfulness be apparent under preexisting law," Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (citation omitted), and prison personnel "can still be on notice that their conduct violates established law even in novel factual circumstances." Hope, 536 U.S. at 741.

Qualified immunity in favor of Defendants also fails on the second step of the inquiry because at the time of Plaintiff's injury in September 2008 the law was clearly established. In Morgan v. Morgensen, 465 F.3d 1041 (9th Cir. 2006), the Ninth Circuit held:

///

> [Osolinski v. Kane, 92 F.3d 934 (9th Cir. 1996)] … clearly established that a safety hazard in an occupational area, the dangerousness of which is exacerbated when a prison official orders a prisoner to continue working with it after the prisoner raised a concern about whether it was safe to do so, constituted a violation of the prisoner's Eighth Amendment rights.
>
> Before Morgan's injury, the contours of this right were sufficiently clear that a reasonable prison official would or should have understood that compelling an inmate to continue operating defective and dangerous prison work equipment would violate the Eighth Amendment.

Morgan, 465 F.3d at 1047.

As in Morgan, Plaintiff has alleged a safety hazard in the kitchen freezer area and he was required to work despite evident concerns about the safety of doing so under the existing conditions. Although Morgan and Osolinski involved dangerous work equipment, versus a dangerous work conditions, the distinction is not material. The holding in Morgan advised a reasonable officer that compelling an inmate to continue to work under dangerous conditions, after the inmate raises concerns as to the safety in doing so, would violate the inmate's rights under the Eighth Amendment "not to be compelled to perform work that endangered his health and caused undue pain." Morgan, 465 F.3d at 1047. Accordingly, Defendants Lindsey and Gonzalez are not entitled to qualified immunity.

### E. Retaliation

#### 1. Defendant Lindsey

As previously stated, Plaintiff contends that Defendant Lindsey retaliated against him for filing a grievance regarding his injury from the unsafe conditions by implementing a policy requiring him to load and unload items from the freezer by hand resulting in further injury and pain to Plaintiff.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord

Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

In order to show causation in this Circuit, Plaintiff need "only put forth evidence of retaliatory motive that, taken in the light most favorable to him, presents a genuine issue of material fact as to" Defendants' motivation. Brodheim, 584 F.3d at 1271 (citing Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003)) (internal quotation marks omitted). This requires Plaintiff to offer either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence: (1) proximity in time between the protected conduct and the alleged retaliation, (2) expressed opposition to the conduct, or (3) other evidence that the reasons proffered by Defendants for the adverse action were false and pretextual. McCollum v. California Dep't of Corr. & Rehab., 647 F.3d 870, 882 (9th Cir. 2011) (citing Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)) (quotation marks omitted).

There is no question that Plaintiff's right to complain about the safety hazards in the kitchen freezer area was protected conduct and to order Plaintiff to continue to work in such dangerousness conditions, despite such knowledge constituted adverse action. Plaintiff declares that on September 15, 2008, he filed a food service department appeal regarding the "deliberate indifference" to the imminent dangers and the safety hazards that existed in the main kitchen freezer area at KVSP. (ECF No. 88, Pl. Decl. ¶ 10.) Plaintiff further declares that immediately after he filed a grievance regarding his injury resulting from the unsafe conditions, Defendant Lindsey implemented a retaliatory "loading and unloading" procedure tailored to punish Plaintiff for filing the appeal. (Id. at ¶ 15.) Plaintiff was ordered to load and unload all food products by hand under the same conditions prior to his injury, which caused further injury and pain to Plaintiff. (Id.)

Plaintiff had a chrono for light duty when he returned to work after the September 10, 2008, injury. However, Defendant Lindsey informed Plaintiff that he was required to work with the group, and Plaintiff contends Lindsey was very angry about the incident and the fact that Plaintiff filed a complaint about it. (Pl. Dep. at 136.) After Plaintiff gave Lindsey the complaint, there was a policy change which forced him to load everything by hand, and Plaintiff was advised that if found using pallet jacks in the freezer he would receive a rules violation. (Id. at 141.)

Plaintiff submits that there is no record of the written "loading and unloading" policy as referenced by Defendant Lindsey. Although Defendant Lindsey declares that "Associate Warden R. Grissom and Plant Manager G. Jaime decided that inmates would not be allowed to push the pallet jacks into the freezer compartments, and had to unload cold storage items into the freezer by hand," there is no independent evidence submitted beyond the mere verbal statement of Defendant Lindsey. (ECF No. 88, Opp'n Attach. D, Req. for Prod. Resp. Nos. 1 & 2.) Defendant Lindsey admits that he implemented the decision to "load and unload" and informed inmates working in the kitchens of the new procedure, and Plaintiff contends such procedure ended after his removal from the kitchen assignment. (Lindsey Decl., Ex. B at 2:18-25.) Plaintiff contends any damage to the property from the pallet jacks was repaired prior to his injury on September 10, 2008. (Id. at 142-143.) A genuine issue of material fact exists as to whether Plaintiff was ordered by Defendant Lindsey to load everything by hand in retaliation for complaining about the unsafe conditions, and the determination of whether a policy existed (and the extent of such policy) hinges on the credibility of Defendant Lindsey which this Court cannot determine on summary judgment.

### 2. Defendant Doran

Plaintiff contends that Defendant Lieutenant Doran removed Plaintiff from his work assignment in the kitchen in retaliation for having filed a grievance relating to his injury from the unsafe work conditions.

Defendant Doran declares the following:

> I am a Correctional Lieutenant, employed by the California Department of Corrections and Rehabilitation (CDCR) at Kern Valley State Prison (KVSP), and am a Defendant in the above action.
>
> In December 2008, my position was in Inmate Assignments, which involved assigning inmates to work programs, consistent with the inmate's expressed desires and eligibility, as well as security and operation needs of KVSP, the safety of the public, and the safety of the inmate.
>
> In December 2008, it was my understanding that Mr. Quezada had been working in the main kitchen at KVSP, had injured his back in September 2008, had returned to this position, and then received a Comprehensive Accommodation Chrono from Dr. Patel, dated November 20, 2008, indicating that inmate Quezada had sustained an injury which required a back brace through May 18, 2009, and that he had physical limitations

> preventing Quezada from lifting or carrying more than ten pounds, or being engaged in frequent bending or pushing. A copy of this Comprehensive Accommodation Chrono is attached. (Attachment 1).
>
> In December 2008, I was aware that inmates working in the main kitchen at KVSP frequently had to lift more than ten pounds, and also had to frequently bend and push objects.
>
> After becoming aware of this Comprehensive Accommodation Chrono, I became concerned that, if Quezada continued with his work in the main kitchen at KVSP, he could sustain a further injury to his back. For this reason, I determined that Mr. Quezada should not work in the main kitchen until he was released from the restrictions contained in the Comprehensive Accommodation Chrono, and removed Mr. Quezada from this assignment.
>
> After I removed Mr. Quezada from his position in the main kitchen at KVSP, Mr. Quezada was eligible to apply for available clerical and light duty positions at KVSP, as well as other positions which did not involve lifting or carrying more than ten pounds, frequent bending or pushing.
>
> I did not speak with Mr. Lindsey concerning a CDCR 602 grievance submitted by Mr. Quezada concerning Quezada's September 2008 [sic] before making the decision to remove Mr. Quezada from his work assignment, and did not remove Mr. Quezada from this position because he had submitted this grievance. Rather, my purpose in removing Mr. Quezada from this position was to comply with the Comprehensive Accommodation Chrono issued by Dr. Patel, in order to avoid further injury to Mr. Quezada.

(ECF No. 78, Ex. D, Doran Decl. ¶¶ 1-7.)

The Court finds that Defendant Doran has met her burden on summary judgment. It is undisputed that in December 2008, Defendant Doran understood that Plaintiff had been working in the main kitchen at KVSP, had injured his back in September 2008, had returned to this position, and then received a Comprehensive Accommodation Chrono from Dr. Patel, dated November 20, 2008, indicating that Plaintiff had sustained an injury which required a back brace through May 18, 2009, and that he had physical limitations preventing Plaintiff from lifting or carrying more than ten pounds, or being engaged in frequent bending or pushing. (ECF No. 88, at 19:1.) Plaintiff fails to submit any admissible evidence countering Doran's understanding that inmates working in the main kitchen at KVSP frequently had to lift more than ten pounds and to frequently bend or push objects. Indeed, it is clear that Plaintiff's job in the kitchen storeroom required repeated pending and pulling (as evidenced

15

1  by the circumstances surrounding his September 10, 2008, injury and alleged re-injury when lifting
2  items from the trucks), and Plaintiff's chrono restricted repeated bending and pulling and lifting over
3  ten pounds.
4        Doran declares that Plaintiff was eligible to apply for other jobs that did not involve frequent
5  lifting or carrying over ten pounds or frequent bending or pulling.  (ECF No. 78, Ex. Doran Decl. ¶ 6.)
6  It is undisputed that Plaintiff was removed from his job assignment after issuance of the medical
7  chrono.  Certainly, it is beyond dispute that the safety and security of inmates is a legitimate
8  penological justification for removal from a prison job. Cal. Code Regs. tit. 15, § 3040(c)(4).  Plaintiff
9  has not established that the removal from his job assignment in the kitchen storeroom on December 1,
10 2008, was in retaliation for a grievance filed on September 15, 2008.  The fact that Plaintiff believes
11 Defendant Lindsey informed Defendant Doran to remove Plaintiff from his job is based on mere
12 speculation.  See Wood v. Yordy, 753 F.3d 889, 905 (9th Cir. 2014) ("mere speculation that
13 defendants acted out of retaliation is not sufficient.")
14       The declaration by inmate Jefferson that he was able to work as a production cook despite
15 lifting restrictions does not support Plaintiff's claim, as Plaintiff fails to demonstrate that Jefferson was
16 required to perform any lifting in that position. (ECF No. 88, at 152.)  In addition, inmate Howard's
17 claim that he also was retaliated against is not relevant to Plaintiff's claim because there is no showing
18 that Doran was involved. (Id. at 129, 131.)  Plaintiff fails to put forth sufficient evidence to show that
19 the removal from his job assignment on December 1, 2008, was done in retaliation for a grievance he
20 filed on September 15, 2008.  In addition, it is undisputed that the removal from his job assignment
21 advanced a legitimate correctional goal in attempting to secure the safety of Plaintiff from further
22 injury in light of his medical chrono.  Simply stated, Plaintiff's speculation is insufficient to defeat
23 summary judgment.  Accordingly, Defendant Doran is entitled to summary judgment on this claim,
24 and the Court need not and does not discuss the issue of qualified immunity.
25 ///
26 ///
27 ///
28 ///

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant Lindsey and Gonzalez's motion for summary judgment on Plaintiff's Eighth Amendment conditions of confinement claim be DENIED;

2. Defendant Lindsey's motion for summary judgment on Plaintiff's First Amendment retaliation claim be DENIED; and

3. Defendant Doran's motion for summary judgment on Plaintiff's First Amendment retaliation claim be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **February 5, 2016**

UNITED STATES MAGISTRATE JUDGE